UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SCOTT BURGARD,

                    Plaintiff,

          -vs-                          **No. 1:15-cv-00296-MAT**
                                        **DECISION AND ORDER**
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.

_____

## I.  Introduction

Represented by counsel, Scott Burgard ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security[1] ("Defendant" or "the Commissioner") denying his application for disability insurance benefits ("DIB").

## II. Procedural History

---

[1]

Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017.  The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

On January 3, 2012, Plaintiff, then forty-nine years-old, filed for DIB, alleging disability beginning July 15, 2011, when a motorcycle struck him as he walked, resulting in muscle, ligament and fascia disorders; anxiety-related disorder (functional nonpsychotic); head trauma; depression; a chronic anterior cruciate ligament ("ACL") tear in his knee; vision problems in his left eye; broken teeth; and leg, hip, knee and foot pain. (T. 40-42, 46-47, 50, 63, 125-128, 143).[2] Plaintiff's application was denied on June 26, 2012 (T. 67-74), and he timely requested a hearing before an administrative law judge ("ALJ"). ALJ Curtis Axelsen held a hearing on August 1, 2013 (T. 33-56), and, on December 2, 2013, issued a decision in which he found Plaintiff was not disabled as defined in the Act. (T. 14-32). On February 12, 2015, the Appeals Council denied Plaintiff's request

---

[2]

Citations to "T." in parentheses refer to pages in the certified copy of the administrative transcript.

for review, leaving the ALJ's decision as the final agency decision. (T. 1-6). This action followed.

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court assumes the parties' familiarity with the facts of this case as set forth in the record and will not repeat them except as necessary. For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted.

## III. The ALJ's Decision

Initially, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2015. (T. 19). At step one of the five-step sequential evaluation, *see* 20 C.F.R. § 404.1520, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15, 2011, the alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff had the severe impairments of meniscal and ACL tears of the left knee, Lisfranc injury to the left foot, and dysthymic disorder.

(*Id.*). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (T. 20-21).

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a), during the period from July 15, 2011 (the day of the motorcycle accident) through November 14, 2012 (two-months status post-arthroscopic surgery on his left knee), except he was limited to two- and three-step tasks with occasional contact with the public and supervisors. (T. 21-26). The ALJ found that medical improvement occurred as of November 14, 2012, *see* 20 C.F.R. § 404.1594(b)(1). As of that date, the ALJ found, Plaintiff had the RFC to perform the full range of light work, as defined in 20 C.F.R. § 404.1567(b), except he is limited to performing two- and three-step tasks with occasional contact with the public and supervisors. (*Id.*). At step four, the ALJ

found that Plaintiff was unable to perform any past relevant work. (T. 26). At step five, the ALJ found, without consulting a vocational expert ("VE"), that considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*). At this step, the ALJ also found that because Plaintiff "was limited to sedentary work from June 15, 2012[, the day he turned fifty-years-old and was therefore closely approaching advanced age,] through November 14, 2012, classifying him as disabled by the Medical-Vocational Rules," thereafter, "his condition improved[,] and he was no longer disabled as of November 14, 2012." (T. 26). Thus, the ALJ found that Plaintiff was not disabled. (T. 27).

**IV. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42

U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## V.  Discussion

Plaintiff makes the following arguments in support of his motion for judgment on the pleadings: (1) the ALJ erred in failing to incorporate his own findings into his RFC assessment; (2) based on those findings, testimony of a VE was required; and (3) the ALJ erred in finding that medical improvement occurred.

### A. ALJ's RFC Finding

Plaintiff argues that the ALJ erred by failing to incorporate his finding of moderate limitations in Plaintiff's ability to maintain concentration,

persistence, or pace into the RFC assessment. Plaintiff further notes that the ALJ gave significant weight to the opinion of Dr. Cheryl Butensky, a state agency medical consultant that completed a Psychiatric Review Technique Form on June 25, 2012, opining that, *inter alia*, Plaintiff had moderate limitations in the ability to maintain attention and concentration for extended periods. According to Plaintiff, Dr. Butensky's opinion was inconsistent with the RFC. Defendant responds that the ALJ's finding with respect to Plaintiff's ability to maintain concentration, persistence, or pace was related to the ALJ's assessment, at steps two and three, of the extent of Plaintiff's dysthymic disorder, and was not an RFC assessment. Defendant also argues that the ALJ's RFC determination fully incorporated the limitations due to Plaintiff's mental impairments, including his limitations in maintaining concentration, persistence, or pace, because it limited Plaintiff to two- and three-step tasks with only occasional contact with the public and supervisors. Defendant further responds that the

ALJ's RFC is consistent with Dr. Butensky's opinion, and, in any event, the ALJ was not required to adopt Dr. Butensky's limitations verbatim in the RFC.

Here, Defendant is correct that ALJ's finding that Plaintiff had moderate limitations in concentration, persistence and pace pertained to the ALJ's findings at steps two and three, not Plaintiff's mental RFC. (T. 21). Moreover, the ALJ incorporated Dr. Butensky's limitations and otherwise fully incorporated Plaintiff's limitations into the RFC. In June 2012, Dr. Butensky reviewed Plaintiff's records and completed a mental RFC assessment for Plaintiff, opining that he was able to perform simple, and some complex, job tasks; was not significantly limited in understanding and memory; and had some moderate limitations in sustained concentration, persistence, social interaction, and adaptation. (T. 391, 393-395). Although the ALJ did not use the precise wording of Dr. Butensky's opinion in the RFC, the ALJ incorporated the concrete consequences of her opinions into the RFC (T. 21-26, 393-394) by limiting Plaintiff

to two- and three-step tasks with only occasional contact with the public and supervisors. *See Manson v. Colvin*, No. 7:15-CV-0676(GTS), 2016 WL 4991608, at *9 (N.D.N.Y. Sept. 19, 2016) ("Moreover, in formulating a plaintiff's RFC, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion." (citing, *inter alia*, *Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (unpublished opn.)).

Moreover, the record shows that the ALJ weighed all of the evidence available to make an RFC finding that was consistent with the record as a whole. *See Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). In addition to Dr. Butensky's opinion, the ALJ also accorded significant weight to the opinion of consultative examiner, Thomas Ryan, Ph.D., who examined Plaintiff on June 18, 2012, around the same time as Dr. Butensky. (T.

369-72). On examination, Dr. Ryan observed that Plaintiff was cooperative; demonstrated adequate relating, social skills, and presentation; had normal motor behavior; made appropriate eye contact; had normal speech; showed a coherent and goal-directed thought process with no evidence of hallucinations, delusions, or paranoia; had an anxious affect, neutral mood, and clear sensorium, although somewhat poorly oriented; demonstrated intact attention, concentration, and memory; and had fair insight and judgment. (T. 370-71). Dr. Ryan opined that Plaintiff could follow and understand simple directions and instructions, perform simple tasks, maintain attention and concentration, and maintain a regular schedule, but had a moderate limitation in the ability to deal with others. (T. 370-71). Dr. Ryan's opinion was largely consistent with that issued by Dr. Butensky, and was consistent with the mental aspect of the RFC assessment. Thus, the ALJ's mental RFC was consistent with other substantial evidence in the medical record.

In support of his argument, Plaintiff cites *Karabinas v. Colvin*, 16 F. Supp.3d 206 (W.D.N.Y. 2014), and *Hudson v. Comm'r of Soc. Sec.*, No. 5:10-CV-300, 2011 WL 5983342 (D. Vt. Nov. 2, 2011). Both cases are distinguishable. Unlike the ALJ here, the ALJ in *Karabinas* failed to incorporate *any* limitations in the RFC to account for the claimant's moderate limitations in maintaining concentration, persistence, and pace. *See Karabinas*, 16 F. Supp.3d at 215.

By contrast, the ALJ in *Hudson* included in the mental RFC a limitation of routine and repetitive tasks with brief and superficial contact with the general public, co-workers, and supervisors. *Hudson*, 2011 WL 5983342, at *2. However, Plaintiff mischaracterizes the issue in *Hudson*. There, the district court considered whether the ALJ posed a hypothetical question to the VE that properly accounted for Hudson's limitations as set forth in the RFC. *Id.* at *10. In any event, the district court in *Hudson* stated, "the Second Circuit has not yet weighed in on the issue of whether a hypothetical

question . . . must specifically account for a plaintiff's limitations in concentration, persistence, or pace in order to accurately portray the plaintiff's impairments[.]" 2011 WL 5583342, at *9. Even so, as previously discussed, the ALJ's RFC limiting Plaintiff to two- and three-step tasks with occasional interaction with the public and supervisors adequately captured Plaintiff's mental limitations, including his limitations in maintaining concentration, persistence, or pace.

## B. The Necessity of a Vocational Expert

Plaintiff also argues that the ALJ improperly relied on the Grid Rules and should have consulted a VE at step five because of Plaintiff's nonexertional limitations. In the RFC, the ALJ found Plaintiff's nonexertional limitations to be only occasional contact with the public and supervisors. (T. 21). "If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert."

*Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). A nonexertional impairment is considered "significantly limit[ing]" "when it causes an additional loss of work capacity beyond a negligible one, or, in other words, . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.* at 411 (internal quotation marks and alteration omitted).

There is no indication from the record or from precedent that such a limitation, by itself, would so substantially erode Plaintiff's sedentary or light work occupational base that VE testimony was necessary. The Second Circuit and cases within it have held that an ALJ may rely on the Grid Rules when claimants have nonexertional limitations similar to those Plaintiff had in this case. *See Zabala*, 595 F.3d at 411 (affirming application of Grids where ALJ found, at step three, that claimant was only moderately limited in her ability to maintain concentration, and RFC "did not limit [the

claimant's] ability to perform unskilled work, including carrying out simple instructions, dealing with work changes, and responding to supervision"); *Reilly v. Colvin*, No. 1:13-CV-00785 MAT, 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) (ALJ's RFC finding which included nonexertional limitation of avoiding "constant" contact "adequately reflected the moderate limitations in social functioning" and "[e]ven if the ALJ had rephrased this limitation and found that plaintiff should have only 'limited' or 'occasional' contact with these individuals, it would not have affected the ultimate disability determination") (citing *Wasiewicz v. Colvin*, No. 13–CV–1026S, 2014 WL 5465451, at *5 (W.D.N.Y. Oct. 28, 2014) (ALJ accounted for moderate limitations by requiring "no more than occasional contact with the public, coworkers, or supervisors"); *Graves v. Astrue*, No. 11–CV–6519(MAT), 2012 WL 4754740, at *11 (W.D.N.Y. Oct. 4, 2012) ("[T]he ALJ did include the 'moderate' limitation . . . in regards to [plaintiff's] ability to work closely with others by finding that [plaintiff] should be limited to having only

occasional contact with co-workers and members of the public[.]")).

Plaintiff also argues that the ALJ should have defined his limitations in an objective form, such as a percentage of time a hypothetical individual would be "off task." Plaintiff cites cases in which vocational experts have testified that claimants who would be off task for a certain percentage of the workday may be unable to sustain employment. *See, e.g.*, *Brown v. Comm'r Soc. Sec.*, 2014 WL 783565, at *10-11, *21, (S.D.N.Y. Feb. 28, 2014). However, none of the cases cited by Plaintiff require a vocational expert to be used in the present case or an ALJ to use specific terms, including percentages, to describe limitations due to mental impairments in the RFC, and the Court has found no such cases in its independent research. Moreover, Dr. Butensky did not go so far as to give percentages as to how long Plaintiff would be off-task when she issued her report opining on Plaintiff's limitations. (T. 379-91).

## C. Whether Plaintiff's Condition Medically Improved

Plaintiff also argues that the ALJ erroneously failed to apply the medical improvement standard set forth in 20 C.F.R. § 404.1594(f) and improperly concluded that his medical condition improved. Defendant responds that the ALJ properly found that Plaintiff experienced improvement in his symptoms, and Plaintiff fails to show that the ALJ would have decided differently had the ALJ applied the eight-step medical improvement standard.

In the present case, the ALJ erroneously cited 20 C.F.R. § 404.1594 in discussing Plaintiff's medical improvement. However, 20 C.F.R. § 404.1594 applies in circumstances where a person has been found disabled and is entitled to, or has been receiving, benefits under the Act. *See* 42 U.S.C. § 423(f) (effective through Nov. 1, 2015) ("A *recipient of benefits* . . . may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling.") (emphasis added));

20 C.F.R. § 404.1594(a), (b)(1) (effective through Mar. 26-27, 2017) ("There is a statutory requirement that, if you are *entitled to disability benefits*, your continued entitlement to such benefits must be reviewed periodically") (emphasis added)); *see also* 20 C.F.R. § 404.1594(f) (setting forth eight-step criteria for decisions of "continuing disability" or "decisions to stop disability benefits"). Here, the record does not reflect any such finding that Plaintiff was disabled, and thus, the ALJ did not err by not applying the eight-step medical improvement standard in 20 C.F.R. § 404.1594(f). *See* Program Operations Manual System ("POMS") DI 28005.001D(2)(a) (explaining medical improvement review standard does not apply to "[i]nitial claims where the requirements for a closed period of disability are not met); POMS DI 25510.001B (providing closed period of disability means disability "for a continuous period of not less than 12 months").

Plaintiff further contends that because the ALJ found that Plaintiff was disabled under the Medical-Vocational

Rules from June 15, 2012, through November 14, 2012 (T. 26), the ALJ's finding qualifies as a favorable medical decision that Plaintiff was disabled thereby requiring the application of the medical improvement standard. However, the ALJ found Plaintiff disabled for a period of five months followed by an improvement in his condition (*Id.*). This was far short of the disability definition under the Act requiring that a disability "has lasted . . . for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (effective through Nov. 1, 2015).

Moreover, substantial evidence supports the ALJ's finding that Plaintiff's knee surgery was successful and that he experienced improvement warranting an increase in his RFC as of November 14, 2012. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (unpublished opn.) (ALJ may rely on medical records showing claimant's symptoms improved with treatment). At Plaintiff's November 14, 2012 appointment with physician Dr. Michael A. Rauh, he stated that his left knee pain was controlled,

and he denied instability in his knee. (T. 24, 436).
Although he had occasional mechanical symptoms, they were
not painful, and he felt that he had improved. (T. 24,
436). Furthermore, on examination, Plaintiff had an
almost full range of motion, intact ligaments, good
quadriceps strength, and no tenderness. (T. 24, 436).
Dr. Rauh noted that Plaintiff was doing well and could
continue to weight-bear as tolerated. (T. 24, 437). In
addition, on January 9, 2013, Dr. Rauh found that
Plaintiff had no pain with passive range of motion and
only slight soreness in his left knee. (T. 24, 446).
Notably, Dr. Rauh opined that Plaintiff had no impairment
or restrictions. (T. 24, 447). Moreover, Plaintiff also
demonstrated a normal gait and good range of motion in
his knee during the February 2013 examinations. (T. 443,
449).

Plaintiff's argument that the ALJ failed to consider
his Lisfranc impairment is also without merit, because
the ALJ found this impairment to be severe at step two
and discussed the evidence relating to this impairment

in his decision, including Plaintiff's failure to purchase the prescribed orthotic and his infrequent trips to the doctor. (T. 19, 24). The ALJ also considered Plaintiff's alleged hip impairment and found that this impairment was not severe. (T. 19). The ALJ noted that Plaintiff did not seek consistent treatment for his hip until March 2013, and cited a January 2012 MRI and March 2013 x-ray examination that showed normal conditions in the hip. (T. 19, 452, 457, 489). Substantial evidence supports the ALJ's finding that Plaintiff's hip pain was not a severe impairment due to an absence of medical signs and laboratory findings. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged. . . ."). Moreover, Plaintiff fails to show what actual limitations his Lisfranc impairment and hip impairment caused that the ALJ did not already

account for in the RFC. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (*per curiam*) ("[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity . . . .") (citation omitted).

## VI. Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision is not legally erroneous and is supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed. Plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's motion for judgment on the pleadings is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


**S/Michael A. Telesca**
   HON. MICHAEL A. TELESCA
United States District Judge

Dated:   December 14, 2017
         Rochester, New York.